## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

OSCAR CASIO-MEJIA,

               Petitioner,                   Case No. 2:25-cv-13032

v.                                        Hon. Brandy R. McMillion
                                             United States District Judge

KEVIN RAYCRAFT, *et al*,

               Respondents.

_____/

## OPINION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS (ECF NO. 1)

Petitioner Oscar Casio-Mejia ("Casio-Mejia" or "Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, alleging he is being unlawfully detained at the North Lake Correctional Facility in violation of the Immigration and Nationality Act ("INA"). *See generally* ECF No. 1. Casio-Mejia, a Mexican citizen, is pending immigration proceedings to remove him from the United States. Despite having been in this country since 2011, raising two children who are both U.S. citizens, and never engaging in criminal activity, Respondent[1] is holding Casio-Mejia and refusing to provide him with a bond hearing

---

[1] Petitioner files this action against Kevin Raycraft ("Raycraft"), Acting Field Director of Enforcement and Removal Operation ("ERO"), Detroit Field Office, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security; U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; and the

pending his removal proceedings.  *Id*.  For the reasons below, this Court finds that Casio-Mejia's detention without a bond hearing is unlawful, a violation of his due process rights, and orders his immediate release, or in the alternative, a bond hearing within seven (7) days.  Accordingly, his Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

## I.

Casio-Mejia is a citizen of Mexico, who has resided in the United States since at least 2011.  ECF No. 1, PageID.6.  He has two children, the youngest of which was born just last week, but both of whom are United States citizens.  *Id*.  Casio-Mejia has no criminal history.  ECF No. 8, PageID.127.  His first encounter with DHS was on April 2, 2016.  ECF No. 7-2, PageID.88.  At that time, he did not qualify as a priority alien under administration guidelines set by the Secretary of Homeland Security, so he was processed and released under Prosecutorial Discretion.  *Id*.

On July 8, 2025, ICE, in coordination with DOJ, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," requiring all noncitizens who entered the United States without inspection to be subject to mandatory detention without bond.  ECF No. 1, PageID.10.  The policy

---

Executive Office for Immigration Review ("EOIR").  In response to this Petition, the Government contends that Petitioner's claim should only be brought against Raycraft, ECF No. 7, PageID.63-64, and Petitioner does not oppose, ECF No. 8, PageID.115.  Thus, the Court will dismiss the Petition against all Respondents except for Raycraft (hereinafter referred to as "Respondent" or the "Government").

applies this detention framework to any noncitizen regardless of when or where they are apprehended.  *Id.*

ICE ERO Officers arrested Casio-Mejia on September 5, 2025, and served him with a Form I-200, Warrant for Arrest of Alien, and Form I-862, Notice to Appear.  ECF No. 7-2, PageID.89.  Casio-Mejia, through counsel, filed a motion for a bond hearing.  *Id.*  The Detroit Immigration Court denied bond on September 25, 2025, after an IJ in Detroit declined having jurisdiction over his case.  ECF No. 1, PageID.15-16.

On September 25, 2025, Casio-Mejia filed a petition for habeas corpus before this Court, pursuant to 28 U.S.C. § 2241.  ECF No. 1.[2]  His Petition alleges violations of the INA and the Fifth Amendment Due Process Clause.  *See id.* at PageID.16-17. Casio-Mejia argues that as a noncitizen residing in the United States, charged as inadmissible for having initially entered the country without inspection, 8 U.S.C. § 1226(a) allows for his release on conditional parole or bond pending removal hearings, after a detention hearing to evaluate his risk of flight and dangerousness. *See generally id.*; ECF No. 8.

The Government asserts that under 8 U.S.C. § 1225(b)(2)(A), Casio-Mejia is properly detained because he falls in a category of noncitizens that the statute

---

[2] This matter was originally assigned to the Honorable Matthew F. Leitman and reassigned to the undersigned as a companion to *Lopez-Campos v. Raycraft*, Case No. 25-cv-12987-BRM-EAS. The Court previously considered nearly identical factual issues and the same legal issues in *Lopez-Campos*.

mandates be detained pending removal proceedings. *See generally* ECF No. 7. Casio-Mejia seeks immediate release from custody or, in the alternative, a bond hearing. ECF No. 1, PageID.18.

Casio-Mejia's Petition has been fully briefed. *See* ECF Nos. 7, 8. The Court has reviewed the filings and finds that the issues have been adequately briefed; therefore, a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f)(2). As the Petition is now ripe for decision, the Court will rule on the record before it. *Id*.

## II.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Casio-Mejia seeks habeas relief arguing he is being unlawfully detained in violation of the INA, because "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents." ECF No. 1, PageID.16.

Congress established two statutes which principally govern detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. The first – Section 1225 – is titled: "Inspection by immigration officers; expedited removal of

inadmissible arriving aliens; referral for hearing." The use of "the word 'arriving' indicates that the statute governs 'arriving' noncitizens, not those present already." *See Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at \*4 (W.D. Ky. Sept. 19, 2025) (citing *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at \*5 (E.D. Mich. Sep. 9, 2025)). And here, the title of the statute is instructive and "especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Barrera*, 2025 WL 2690565 at \*4 (citing *Yates v. United States*, 574 U.S. 528, 552 (Alito, J., concurring in judgment)).

This section is a mandatory detention provision that states, in relevant part:

> **(2)  INSPECTION OF OTHER ALIENS**
> **(A)  In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Key to the issues raised here, Section 1225 applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted or who arrive[] in the United States" 8 U.S.C. § 1225(a)(1). Upon arrival, all applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and beyond a doubt entitled to be admitted," they "***shall*** be detained for" standard removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The

only exception to this mandatory detention provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

The second statutory provision – Section 1226, titled: "Apprehension and detention of aliens" – provides for a discretionary detention framework, and states, in relevant part:

> **(a) ARREST, DETENTION, AND RELEASE**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)  may continue to detain the arrested alien; and
>
> (2)  may release the alien on—
>
>> (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a).  Subsection (c) of Section 1226 prohibits certain noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted (like Petitioner) from being released on bond, *but only if* the noncitizen has also been:

> charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E)[3].  Relevant here, noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

### III.

### A.   ADMINISTRATIVE EXHAUSTION

Before determining the merits of this Petition, the Court must first address Respondent's argument that it should require Petitioner to exhaust his administrative remedies (*e.g.* appeal the IJ's decision to deny him a bond hearing to the BIA), before Casio-Mejia is permitted to proceed with his habeas Petition.  *See* ECF No. 7, PageID.66.  The Court disagrees exhaustion is necessary.

"Where Congress specifically mandates, exhaustion is required."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1991).  But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court.  *Id.; see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).  Exhaustion requirements not written into the text of the statute are prudential.  *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994).  "Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not."  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

---

[3] This section that subjects certain noncitizens to mandatory detention was added by Congress in January 2025 with the passing of the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).

In determining when to require prudential exhaustion, courts apply the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193-95 (1969)), which weighs whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*See Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015).  Here, all three factors weigh against requiring exhaustion.  First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record.  Second, because Casio-Mejia's habeas petition includes a due process claim, the administrative scheme (*i.e.*, appeal to the BIA) would be futile.  And third, administrative review is not likely to change Respondent's position that Section 1225(b)(2)(A) applies in this context.

While the Court would ordinarily enforce the exhaustion doctrine when it serves the dual purpose of promoting judicial economy and protecting administrative agency authority, waiver is appropriate when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks.  *See McCarthy*, 503 U.S. at

145; *see also Fazzani v. NE Ohio Corr. Ctr.*, 473 F.3d 229 (6th Cir. 2006) (citing *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001) and *Goar v. Civiletti*, 688 F.2d 27, 28-29 (6th Cir. 1982)); *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981). Exhaustion is also excused when delay means hardship. *See Shalala v. Illinois Council*, 529 U.S. 1, 13 (2000).

Exhaustion would be futile because a bond appeal before the BIA would take too long. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (finding BIA bond appeals on average take six months to complete). Casio-Mejia is currently appearing before the Immigration Court to challenge his removal. ECF No. 7-2, PageID.90. So, its senseless to require him to wait six months for the BIA to reach a decision on whether he is entitled to a bond hearing, when a removal determination would likely come before that decision.

And as further evidence of futility, the Government itself points out, "Casio-Mejia is unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the immigration courts, and which conclusively rejects Casio-Mejia's arguments in this case." *See* ECF No. 7, PageID.66.[4] Consequently, any administrative remedy would

---

[4] While BIA decisions may be binding upon the agency at large, they are not binding on this Court. *See* 8 C.F.R. § 1003.1(g)(1) ("[D]ecisions of the [BIA] …are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United

leave Casio-Mejia without recourse; and therefore, should be excused. *See Shawnee Coal*, 661 F.2d at 1093 (recognizing that administrative exhaustion may be excused if it would be futile). It's unmistakable that waiver is appropriate because depriving Casio-Mejia of his liberty while awaiting a BIA appeal decision certainly equates to hardship, and any delay results in the very harm Casio-Mejia is trying to avoid by seeking the bond hearing – detention. *See Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025).

Aside from waiver, the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted). Since Casio-Mejia's Petition includes a due process claim, an appeal to the BIA would be pointless. The fact that Casio-Mejia reserved his right to appeal the denial of a detention hearing to the BIA does not persuade the Court against exercising its discretion to decide this habeas petition. *See* ECF No. 1-2, PageID.23.

---

States."); *see also Sulivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (noting agency rulings are binging on all components of the agency itself but not federal courts); *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) (discussing interruption of laws is the solemn duty of the Judiciary).

Furthermore, this Court and many others have waived exhaustion in similar proceedings.   *See e.g. Shweika*, 2015 WL 6541689 at *13; *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025).   And this Court has previously held, "[w]hen the liberty of a person is at stake, every day that passes is a critical one, and the Court cannot fault [a detainee] for taking appropriate measures to pursue his claims through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner." *See Lopez-Campos*, 2025 WL 2496379 at *5.   The same holds true for Casio-Mejia.

Hence, because exhaustion would be futile and unable to provide Casio-Mejia with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition.

## B.   STATUTORY INTERPRETATION

The Court then turns to the central question in this case, like it and so many other courts have had to do in recent months.   Which detention framework properly applies to a Mexican citizen, who has lived in the United States since 2011, was

11

never lawfully admitted to the country, encountered USBP Officers nearly 10 years ago, released as a nonpriority alien, who has now been arrested and is facing removal proceedings?  Casio-Mejia says Section 1226(a), and the Government says Section 1225(b)(2)(A).  This Court has previously ruled that Section 1226(a) applies and finds the facts of this case warrant the same result.  *See Lopez Campos*, 2025 WL 2496379.

For the past 30 years, the Government has applied Section 1226(a) in seeking detention in this context.  But now that the Government's immigration policy has changed, and Section 1225(b)(2)(A) is more favorable, it wants the Court to declare that the historical application of Section 1226(a) is incorrect.  That, the Court will not do.  Respondent simply can't have it both ways.  The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.

In harmonizing Sections 1225 and 1226 of the INA, the Court must interpret the meaning of the statutes that apply at the time of inspection by immigration officials and at the time of apprehension.  "A statute should be construed so that effect is given to all its provisions[.]"  *Corley v. United States*, 556 U.S. 303, 314 (2009); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts "must give effect to the clear meaning of statutes as written.").  Each word within

the statute must be given "'it's ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  *Kentucky*, 23 F.4th at 603 (citing *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997); *Graham Cnty. Soil & Water Conservation Dist. et al. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005)).  "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012).  Courts must also "use every tool at their disposal to determine the best reading of the statute."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).  In doing so here, the Court must determine whether Casio-Mejia is lawfully detained under Section 1225(b)(2)(A), as Respondent claims.  And the Court finds he is not.

Beginning with the language of the statute itself.  The plain text of Section 1225(b)(2)(A) and Section 1226(a) do not support Respondent's contention that "§ 1225(b)(2) requires mandatory detention for noncitizens who fall within its terms until the conclusion of their administrative proceedings and detaining a noncitizen under § 1226(a), which allows release on bond, would nullify the mandatory detention required by § 1225(b)(2)."  ECF No. 7, PageID.77.  Section 1225(b) applies to "Inspection for applicants for admission," and subsection (1) governs "Inspection of aliens ***arriving in*** the United States and certain other aliens who have not been admitted or paroled."  *Id.* (emphasis added).  Section 1226, on the other

hand, applies to the "[a]pprehension and detention of aliens."  While not binding, statutory headings/titles are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance.  *See Merit Mang. Grp, LP v. FIT Consulting, Inc.*, 583 U.S. 366, 380 (2018); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.").  Here, it is as simple as looking to which statute makes the most sense – was Casio-Mejia arriving and being inspected, or was he apprehended and detained.  The facts could not be more clear that it was the latter.

Looking to Section 1225(b)(2)(A), when dealing with "inspection and removal of arriving aliens," immigration officials "shall" detain "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).  Respondent argues that the term "applicant for admission" is defined as any "unadmitted noncitizens present in the United States," and therefore applies to anyone here unlawfully, even if they are already physically present—regardless of the length of time they have been present.  *See* ECF No. 7, PageID.68 (citing 8 U.S.C. § 1225(a)(1)).  They similarly argue that "seeking admission" is an inquiry of seeking a "lawful entry."  *Id.* at PageID.69.  Thus, "[a] noncitizen's previous

unlawful physical entry has no bearing on this analysis." *Id.* So, under Respondent's interpretation, Section 1225(b)(2)(A) requires detention of any noncitizen "present" in the country who has not been lawfully admitted. The Court finds this much too broad.

The Court finds that 1225(b)(2)(A) applies when people are being inspected, which usually occurs at the border, when they are seeking lawful entry into this country. Much like the petitioner in *Lopez-Campos*, Casio-Mejia was arrested by immigration officials within the United States, over 15 years after arriving. *See Lopez-Campos*, 2025 WL 2496379 at *7. There is no logical interpretation that would find that Casio-Mejia was actively "seeking admission" after having resided here, albeit unlawfully, for more than a quarter of a century.

In contrast, looking to the plain language of Section 1226, when dealing with "apprehension and detention of aliens," upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This provision is clearly applicable, as Casio-Mejia encountered ICE ERO Officers, then they arrested and detained him. He is pending removal proceedings in the Immigration Court, therefore the Attorney General, "may continue to detain" and "may release on bond." *Id.* While this language is discretionary, the statute provides that the noncitizen has the right to request a custody redetermination (*i.e.*, bond hearing)

15

before an IJ – which is precisely what Casio-Mejia has done.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

Notably, Respondent previously released Casio-Mejia and the Government does not cite to anything to support its new interpretation that his current arrest is subject to 1225(b)(2)(A).  And the Court is not persuaded that simply because Petitioner has filed for a cancellation of removal, he is now somehow an arriving citizen seeking admission.  To hold otherwise, would allow the Government to sweepingly apply a provision of the INA that is inapplicable, and the Court is not willing to do that.  Nine years after having initially encountered Casio-Mejia and releasing him, and following his rearrest on September 5, 2025, Respondent now claims his detention was under Section 1225(b)(2)(A).  ECF No. 7-2, PageID.90. The Court cannot credit this new position that was adopted post-hac, despite clear indication that Casio-Mejia was not detained under this provision when he was first apprehended and released in 2016.  *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible

post hoc rationalizations").[5]  And nearly every, if not all, courts addressing this very

issue have held the same.[6]

The Supreme Court has looked at these statutes and clarified that they apply

in different circumstances.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018).

Section 1225 is "framed [] as a part of the process that 'generally begins at the

Nation's borders and ports of entry, where the Government must determine whether

[noncitizens] seeking to enter the country are admissible.'"  *Rosado v. Figueroa, et*

*al.*, No. 2:25-cv-02157-DLR-CDB, 2025 WL 2337099, at *8 (citing *Jennings*, 583

U.S. at 287).   Whereas Section 1226(a) applies to the process of "arresting and

detaining" noncitizens who are already living "inside the United States" but still

subject to removal.  *Jennings*, 538 at 288.  Put simply, Section 1225 applies to

noncitizens "arriving to the country" and Section 1226 governs detention of

noncitizens "already in the country."  *Id*.

---

[5]  *See Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025).

[6] *See e.g. Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025) ("DHS cannot convert the statutory authority governing . . . detention from [Section 1225(b)] to [Section 1226(a)] through the post-hoc issuance of a warrant." (citing *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025)); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 208438 (D. Mass. July 24, 2025) ("[S]ection 1125(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statues."); *Lopez Benitez*, 2025 WL 2371588 at *5 ("The Court cannot credit Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation.").

Looking to the facts of this case, it is undisputed that Casio-Mejia, by definition, is a noncitizen "present in the United States who has not been admitted or paroled." 8 U.S.C. § 1182(a)(6)(A). Respondent concedes that they do not know when Casio-Mejia arrived in the U.S. *See* ECF No. 7-2, PageID.88. Casio-Mejia states that he has resided here for nearly fifteen years. *Id.*; ECF No. 1, PageID.6. Under these circumstances, it cannot be said that Section 1225(b)(2)(A) applies to him. Casio-Mejia was not "arriving to the country." Quite the contrary, he was arrested while present and "already in the country," having lived here for over a decade, making Section 1226 applicable. *See Jennings*, 538 at 288; *see also Lopez-Campos*, 2025 WL 2496379 at *8.

Further, if Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework. The Laken Riley Act added a subsection to Section 1226 that specifically mandated detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Casio-Mejia), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) ***and*** have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. §

1226(c)(1)(E).  Respondent's interpretation of the statutes would render this recently

amended section superfluous.  As another court recently held,

> [W]hile Section 1226(a) expressly carves out certain "criminal"
> noncitizens from its discretionary framework, it does not similarly
> carve out noncitizens who would be subject to mandatory detention
> under Section 1225(b)(2).  *See* 8 U.S.C. § 1226(a) ("*Except as provided
> in subsection (c)* ..., the Attorney General ... *may*" (emphases added)).
> "That express exception" to Section 1226(a)'s discretionary framework
> "implies that there are no *other* circumstances under which" detention
> is mandated for noncitizens, like [Casio-Mejia], who are subject to
> Section 1226(a).  *Jennings*, 583 U.S. at 300 (citing A. SCALIA & B.
> GARNER, READING LAW 107 (2012)); *see Shady Grove Orthopedic
> Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that
> Congress has created specific exceptions" to the applicability of a
> statute or rule "proves" that the statute or rule generally applies absent
> those exceptions).

*dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14,

2025).  "If § 1225(b)(2) already mandated detention of any alien who has not been

admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E)

to the statutory scheme was pointless" and this Court, too, "will not find that

Congress passed the Laken Riley Act to 'perform the same work' that was already

covered by § 1225(b)(2)."  *Maldonado v. Olsen*, ---F. Supp.3d----, No. 0:25-cv-

03142, 2025 WL 237441, at*12 (D. Minn. Aug. 15, 2025).

There can be no genuine dispute that Section 1226(a), and not Section

1225(b)(2)(A), applies to a noncitizen who has resided in this country for over

twenty-five years and was already within the United States when he recently

encountered and was apprehended and arrested by ICE ERO.  The reading of the

19

statutes supports this finding, as does every other Court that has had to address the

distinction between Section 1225(b)(2)(A) and Section 1226(a).[7]   Therefore, the

Court finds that Casio-Mejia is not subject to the provisions of Section

---

[7] *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-cv-03162-JFB-RCC, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Maldonado v. Olson*, ---F.Supp.3d ----, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F.Supp.3d ----, No. 0:25-cv-03051, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-cv-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Doe v. Moniz*, --- F.Supp.3d ----, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Salcedo Aceros v. Polly Kaiser et al.*, No. 25-cv-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Lamidi v. FCI Berlin, Warden*, No. 1:25-cv-00297-LM-TSM (D.N.H. Sept. 15, 2025); *Garcia Cortes, v. Noem et al.*, No. 25-cv-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Maldonado Vazquez v. Feeley et al.*, No. 25-cv-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos et al.*, No. 25-cv-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v. Crawford*, ---F.Supp.3d ----, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Yumbillo v. Stamper*, No. 25-cv-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL2690565 (W.D. Ky. Sept. 19, 2025); *Choglo Chafla v. Scott et al.*, No. 2:25-cv-00437-SDN, 2025 WL 2688541 (D. Me. Sept. 22, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, No. 1:25-cv-01163-KES-SKO, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Giron Reyes v. Lyons*, ---F. Supp. 3d ----, No. 25-CV-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Barrajas v. Noem et al.*, No. 25-cv-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Valencia Zapata v. Kaiser*, ---F. Supp. 3d ----, No. 25-cv-07492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Quispe v. Crawford, et al.*, No. 1:25-cv-1471-AJT-LRV, 2025 WL2783799 (E.D. Va. Sept. 29, 2025); *Belsai D.S. v. Bondi, et al.*, No. 25-cv-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Echevarria v. Bondi, et al.*, No. cv-25-03252-PHX-DWL, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, ---F. Supp. 3d ---, No. 25-cv-12664-PBS, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Hyppolite v. Noem, et al.*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

1225(b)(2)(A).  Rather, he clearly falls under the provision of Section 1226(a) and is subject to the discretionary bond determination outline therein.

## C.    DUE PROCESS

Finally, Casio-Mejia argues that his continued detention is a violation of due process – and the Court agrees.

The Fifth Amendment guarantees the right to be free from deprivation of life, liberty or property without due process of law.  U.S. CONST. amend. V.  Liberty is one of the most basic and fundamental rights afforded and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The Due Process Clause extends to all "persons" regardless of status, including noncitizens (whether here lawfully, unlawfully, temporarily, or permanently).  *Id.* at 693; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *4 (6th Cir. Jan. 18, 2023).

Respondent does not dispute that Casio-Mejia is entitled due process, rather the Government argues that it afforded the process due under Section 1225(b)(2)(A) when Casio-Mejia "was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has requested bond, he has the right to appeal the denial of his request for bond, he has been detained by

ICE for four weeks, and he is scheduled for another hearing in immigration court in less than two weeks." *See* ECF No. 7, PageID.64-65. The Supreme Court has held that "due process under the constitution is coextensive with the removal procedures provided by Congress." *Id.* at PageID.64 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020)). However, having found that Section 1226(a) governs Casio-Mejia's detention, the Government's assessment fails and the process due to a non-citizen that is apprehended and detained is that which is afforded under Section 1226(a) – a bond hearing. Here, the IJ did not conduct a bond hearing.

In evaluating due process in the context of civil confinement, the Court looks to (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *Mathews v. Eldrige*, 424 U.S. 319 (1976); *see also United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). All three factors weigh in favor of affording Casio-Mejia a detention hearing. First, his liberty is at stake. Second, the risk of erroneously depriving him of his freedom is high if the IJ fails to assess his risk of flight and dangerousness. And third, on the record currently before the Court, given the history and characteristics of this Petitioner, the Government has not and

likely cannot show that it has a significant interest in Casio-Mejia's continued detention.

Accordingly, the Court agrees that detention of Casio-Mejia under the mandatory detention framework is a violation of his due process rights.

## IV.

As this Court has previously stated:

> Section 1226(a) of the INA recognizes that the core and "most elemental of liberty interests" is to be free from restraint and physical detention.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  For centuries, the Government has acted in accordance with these principles.  The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair.  In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests.

*Lopez-Campos*, 2025 WL 2496379 at *10.  The plain language of both Sections 1226(a) and 1225(b)(2)(A) mandate a finding that Casio-Mejia is entitled to a detention hearing pending his removal proceedings.  Because the Immigration Court is in the best position to evaluate Petitioner's risk of non-appearance and dangerousness, this Court leaves to its sound discretion a determination on that issue.

Accordingly, the Court **DISMISSES** the Petition against Respondents Kristi Noem, Pamela Bondi, DHS, and EOIR.  Casio-Mejia's Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.  Respondent is **HEREBY ORDERED** to

immediately release Casio-Mejia, or in the alternative, provide him with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order.

**IT IS FURTHER ORDERED** that Respondent is **ENJOINED** from pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondent shall file a Status Report with this Court on or before October 28, 2025, to certify compliance with this Order. The Status Report shall include if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS SO ORDERED.**

Dated:  October 21, 2025                          s/Brandy R. McMillion
        Detroit, Michigan                          HON. BRANDY R. MCMILLION
                                 United States District Judge